1   FRANCIS M. GREGOREK (144785)
    gregorek@whafh.com
2   BETSY C. MANIFOLD (182450)
    manifold@whafh.com
3   RACHELE R. RICKERT (190634)
    rickert@whafh.com
4   WOLF HALDENSTEIN ADLER
      FREEMAN & HERZ LLP
5   750 B Street, Suite 2770
    San Diego, CA 92101
6   Telephone: 619/239-4599
    Facsimile: 619/234-4599
7
8   Attorneys for Plaintiff

9   [Additional Counsel Appear On Signature Page]

10

11              UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14  STEVEN H. BUELL, on behalf of himself and   ) CASE NO.
    all others similarly situated,              )
15                                              )
16            Plaintiff,                        )   CLASS ACTION COMPLAINT
                                                )
17  v.                                          )   **JURY TRIAL DEMANDED**
                                                )
18  VICTOR VIEGAS, STEPHEN AMBLER,              )
19  RALPH EDWARD CLENTON                        )
    RICHARDSON, DANIEL J. CHAVEZ and            )
20  IMMERSION CORPORATION,                      )
                                                )
21            Defendants.                       )
                                                )
22  _____  )

23

24

25

26

27

28

## CLASS ACTION COMPLAINT

Plaintiff Steven H. Buell on behalf of himself and all others similarly situated, through his undersigned attorneys, alleges the following based upon the investigation made by and through his counsel, which included, *inter alia*, a review of relevant public materials filed by Immersion Corporation ("Immersion" or the "Company") with the Securities and Exchange Commission ("SEC"), as well as, teleconferences, press releases, news articles, analyst reports and media reports concerning the Company. This complaint is also based upon Plaintiff's personal knowledge as to Plaintiff's own acts, and upon information and belief as to all other matters, based upon the aforementioned investigation.

## SUMMARY OF ACTION

1. Before the Court is a class action complaint alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act") filed on behalf of all persons, other than Defendants, who purchased Immersion common stock between May 4, 2007 and June 30, 2009, inclusive (the "Class Period") to recover damages caused by Immersion and the Defendants defined below.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Many of the acts and practices complained of herein occurred in substantial part in this District, and Immersion maintains its corporate headquarters in this District.

5. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

1

**PARTIES**

2   6.   Plaintiff Steven H. Buell purchased the common stock of Immersion Corporation,

3   as set forth more fully in the annexed certificate, and suffered economic damages.

4   7.   Defendant Immersion Corporation is incorporated under the laws of the State of

5   Delaware. The Company has its headquarters at 801 Fox Lane, San Jose, California, 95131. The

6   Company describes itself as a leader in touch/sense (or haptic) technology – holding more than

7   700 patents in the field.

8   8.   The Defendants listed below served, during the period specified, as senior officers

9   and/or directors of Immersion:

10   (a)   Defendant Victor Viegas ("Viegas") has served as Immersion's Chairman

11   of the Board from October 31, 2007, until February 2009; CEO from October 2002 until April

12   2009; and President since February 2002 until April 2009. He was CFO and VP Finance from

13   August 1999, when he joined the company, until February 2005. He holds a bachelor's degree in

14   accounting and an MBA from Santa Clara University and is also a CPA in the state of California.

15   (b)   Defendant Stephen Ambler ("Ambler") joined Immersion in February 2005

16   as CFO and VP Finance, responsible for finance, operations, and human resources. Over his 27-

17   year career, he has managed business and financial strategies; tax planning and venture and public

18   funding; and financial process, controls, and reporting. He holds a diploma in accounting studies

19   from Oxford Polytechnic in England and is qualified as a Chartered Accountant in England and

20   Wales.

21   (c)   Defendant Ralph Edward Clenton Richardson ("Richardson") is currently

22   serving and has served as President and CEO of Immersion since April 2009.

23   (d)   Defendant Daniel J. Chavez was, until August 7, 2009, Senior Vice

24   President and General Manager of Immersion's Medical line of business.

25   9.   Defendants Viegas, Ambler, Richardson and Chavez are sometimes referred to

26   herein as the "Individual Defendants." Because of the Individual Defendants' positions with the

27   Company, each had access to the adverse undisclosed information about the Company's business,

28   operations, operational trends, financial statements, markets and present and future business

CLASS ACTION COMPLAINT

- 2 -

prospects via access to internal corporate documents (including the Company's operating plans, budgets, forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. The Individual Defendants may also be referred to with the Company as Defendants ("Defendants").

10.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of Defendants identified above. Each of them, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Each was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, was aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, traded on the NASDAQ, and governed by the provisions of the federal securities laws, the Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.  Because of their Board membership and/or executive and managerial positions with Immersion, each of the Defendants had access to the adverse undisclosed information about Immersion's business prospects, financial condition and performance, as particularized herein, and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Immersion and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.   Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Immersion securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Immersion's business, operations, management and the intrinsic value of Immersion common stock; and (ii) caused Plaintiff and other members of the Class to purchase Immersion securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased Immersion securities during the Class Period and who suffered damages (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate

families and their legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable. According to the Company's financial report filed May 6, 2009, on Form 10-Q with the SEC, as of April 30, 2009, Immersion had approximately 27,957,359 shares of common stock outstanding. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Immersion or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, financial condition and management of Immersion;

(c)     whether Defendants acted knowingly or recklessly in making materially false and misleading statements during the Class Period;

(d)     whether the market prices of the Company's common stock was artificially inflated or distorted during the Class Period because of Defendants' conduct complained of herein;

and

(e)     to what extent the members of the Class have sustained damages and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FACTUAL BACKGROUND

21.     The Company was founded in May of 1993 and incorporated under the laws of the State of Delaware. It became publicly traded in November of 1999.

22.     The Company engages in the development, manufacture, licensing, and support of hardware and software technologies and products that enhance digital devices with touch interaction.

23.     The Company holds over 700 issued or pending patents. Its Immersion Touch segment offers touch-enabling technologies for consumer gaming peripherals; mobile communications and portable devices for handset original equipment manufacturers, mobile operators, and application developers; TouchSense technology for both rotary controls and touch screens appropriate for use in automobiles; and three-dimensional and mechanical computer-aided design products, including the MicroScribe product line, which contains sensor and microprocessor technologies that allow users to measure or digitize physical objects by tracing their contours with a stylus. This segment also manufactures and sells specialized products, such as computer peripherals that are not touch-enabled.

24.     The Company's Immersion Medical segment offers medical simulation product lines, including the Virtual IV system, which simulates needle-based procedures, such as intravenous catheterization and phlebotomy; the Endoscopy AccuTouch System that simulates endoscopic procedures, including bronchoscopy, and lower and upper GI procedures; the

CathLabVR System, which simulates endovascular interventions, such as cardiac pacing, angiography, angioplasty, and carotid and coronary stent placement; and the LapVR System that simulates minimally invasive procedures involving abdominal and pelvic organs to hospitals, colleges and universities, nursing schools, medical schools, emergency medical technician training programs, the military, medical device companies, and other organizations involved in procedural medicine.  Immersion sells its products through direct sales, distributors, and value-added resellers in North America, Europe, and the Far East.

## CLASS PERIOD MISSTATEMENTS AND OMISSIONS

25.     The Class Period began after the market closed on May 3, 2007 with the Company's issuance of first quarter 2007 financial results for the period ended March 31, 2007. In particular, the Company reported net income figures that were inflated because they understated income tax expenses.  The press release announcing these results stated in pertinent part:

> Net income for the first quarter was $122.4 million compared to a net loss of $2.9 million for the first quarter of 2006. Diluted earnings per share were $4.13 for the quarter compared to $0.12 loss per share for the first quarter of 2006.

> * * *

> Immersion will be able to utilize the majority of its tax net operating loss carryforwards against the income recorded in the quarter. Provision for income tax expense for the quarter was $8.5 million, an effective tax rate of 6.5%.

This information was false and misleading when made because the Company lacked adequate internal controls and had understated income tax expense by $6.6 million in this quarter.

26.     After the May 3, 2007, market close and issuance of the above referenced press release, the Company held a conference call with investors to report on the first quarter results. Defendant Viegas reported on the call that, "net income for the first quarter was $122.4 million, compared to a net loss of $2.9 million for the first quarter of 2006.  Diluted earnings per share were $4.13 for the quarter."

27.     Defendant Ambler repeated this information on the conference call and added, "our tax expense for the quarter totals $8.5 million, compared to $102,000 in the comparable quarter a

year ago. This is an effective tax rate of 6.5%." The price of Immersion stock closed at $10.09 per share on the next trading day.

28.    These statements made by Defendants Viegas and Ambler on the conference call with investors, as well as on the press release, were false and misleading when made since the Company had understated income tax expense by $6.6 million in this quarter due to overestimating state income tax expense, offset by an error in releasing valuation allowance to income tax expense related to stock option deductions for prior years.

29.    On May 10, 2007, the Company filed its quarterly report with the SEC on Form 10-Q relating to the financial period ended March 30, 2007. The Form 10-Q reiterated the false net income results stated in the press release and contained certifications pursuant to sections 302 and 906 of the Sarbanes Oxley Act of 2002 signed by Defendants Viegas and Ambler. The certifications stated in pertinent part:

> 1.    I have reviewed this quarterly report on Form 10-Q of Immersion Corporation;
>
> 2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations, and cash flows of the registrant as of, and for, the periods presented in this report;
>
> 4.    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
> a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to

us by others within those entities, particularly during the period in which this report is being prepared;

b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize, and report financial information; and

b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

and:

In connection with the Quarterly Report of Immersion Corporation (the "Company") on Form 10-Q for the period ending March 31, 2007 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), I certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that based on my knowledge:

(1) The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m or 78o(d)); and

(2) The information contained in the Report fairly presents, in all material respects, the financial condition and result of operations of the Company.

These certifications were false and misleading when made because the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition.

30.     On July 27, 2007, the Company announced that Defendant Viegas had "entered into a stock trading plan in accordance with Rule 10b5-1c of the Securities and Exchange Act of 1934." The press release stated in pertinent part as follows:

Rule 10b5-1 plans may only be entered into when the officer or director is not in possession of material, nonpublic information. The rule permits officers and directors of public companies to adopt predetermined plans for the future sale of specified amounts of securities, on specified dates and at specified prices, on a nondiscretionary basis, even if subsequent material and nonpublic information becomes available. Using these plans, insiders can gradually diversify their investment portfolios, can spread stock trades out over an extended period of time to reduce any market impact, and can avoid concerns about whether they had material, nonpublic information when they sold their stock. The stock trading plan adopted by Mr. Viegas will permit him to simultaneously exercise stock options and sell up to 127,081 shares of Immersion common stock.

However, Defendant Viegas was in possession of material, nonpublic information and was aware that the Company had understated income tax expense by $6.6 million.

31.     On August 2, 2007, after the market closed, the Company released second quarter 2007 financial results. In particular, it reported the following figures:

Net income for the second quarter was $176,000 compared to a net loss of $2.4 million for the second quarter of 2006. Diluted earnings per share were $0.01 for the quarter compared to $(0.10) loss per share for the second quarter of 2006.

* * *

Net income for the first six months of 2007 was $122.6 million, or $4.03 diluted earnings per share, compared to a net loss of $(5.3)

million, or $(0.22) loss per share, for the first six months of 2006.

Commenting on the quarter, Defendant Viegas stated the following:

> 'Second quarter revenue from our Medical, Gaming, and Touch Interface Products groups led our 29% revenue growth over the second quarter of last year,' said Victor Viegas, Immersion CEO and president. 'Our back-to-back profitable quarters this year reflect our continued efforts to achieve sustained profitability.'

The price of Immersion stock rose the next trading day to close at $16.55 per share.

32.    These statements by the Company and Defendant Viegas were false and misleading because they misrepresented the company's net income and understated the Company's income tax expenses by $6.6 million.

33.    After the issuance of the press release on August 2, 2007, the Defendants held a conference call with investors. On the conference call, Defendant Viegas stated that, "our net income for the quarter was $0.01 of earnings per diluted share." Defendant Ambler repeated this information and added that, "our net income tax for the quarter was $176,000 or $0.01 of earnings per diluted share. During the quarter, we revised our tax – sorry – we revised our estimate of our income tax provision for the year and accounted for an income tax benefit of $1.5 million."

34.    These statements made by Defendants Viegas and Ambler on the conference call with investors were false and misleading when made since the Company had understated income tax expense by $6.6 million due to overestimating state income tax expense, offset by an error in releasing valuation allowance to income tax expense related to stock option deductions for prior years.

35.    On August 8, 2007, the Company filed its quarterly report with the SEC on Form 10-Q relating to the financial period ended June 30, 2007. The Form 10-Q reiterated the false net income results stated in the August 2, 2007, press release and contained certifications pursuant to sections 302 and 906 of the Sarbanes Oxley Act of 2002 signed by Defendants Viegas and Ambler. These Certifications were identical to the ones presented above and were false and misleading because the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition and had falsely reported its income tax expenses.

36.     On November 1, 2007, after the market closed, the Company announced its third quarter 2007 financial results.  The release detailed net income figures that were once again inflated by understated income tax expenses.  In particular, the release stated the following:

> Net income for the third quarter was $493,000 compared to a net loss of $(3.2) million for the third quarter of 2006. Diluted earnings per share were $0.02 for the quarter compared to $(0.13) loss per share for the third quarter of 2006.
>
> ***
>
> Net income for the first nine months of 2007 was $123.1 million, or $3.93 diluted earnings per share, compared to a net loss of $(8.4) million, or $(0.34) loss per share, for the first nine months of 2006.

Commenting on the results, Defendant Viegas stated the following:

> 'Immersion has now completed three consecutive profitable quarters with very strong year-to-date revenue growth compared to the first nine months of 2006. Revenue from our Medical business grew 22%, Touch Interface Products 32%, and Gaming 47%. We also reached a significant level of third-quarter revenue of $930,000 in our Mobility business,' said Victor Viegas, Immersion CEO, president, and chairman of the board.

The stock price rose to $16.33 on the next trading day.

37.     The foregoing statements concerning the Company's earnings and reported results were false and misleading because they inflated the Company's reported net income and understated the Company's income tax expenses by $6.6 million due to Defendants overestimating state income tax expenses as offset by errors in releasing valuation allowance to income tax expense related to stock option deductions for prior years.

38.     After the issuance of the press release on November 1, 2007, Defendant Viegas held a conference call with investors.  On the conference call Defendant Viegas stated that, "our net income for the third quarter was $0.02 of earnings per diluted share.  Our net income for the quarter was $493,000 or $0.02 per earnings -- $0.02 of earnings per diluted share.  Year-to-date, diluted earnings per share were $3.93."

39.     These statements made by Defendant Viegas on the conference call with investors were false and misleading when made since the Company had inflated net income by understating

income tax expense by $6.6 million due to overestimating state income tax expense, offset by an error in releasing valuation allowance to income tax expense related to stock option deductions for prior years.

40.     On November 8, 2007, the Company filed its quarterly report on Form 10-Q relating the financial period ended September 30, 2007.  The Form 10-Q reiterated the false net income results stated in the November 1, 2007, press release and contained certifications pursuant to sections 302 and 906 of the Sarbanes Oxley Act of 2002 signed by Defendants Viegas and Ambler.  These Certifications were identical to the ones presented above and were false and misleading because the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition and had falsely reported its income tax expenses.

## THE FIRST ACCOUNTING INDISCRETION IS REVEALED

41.     On February 28, 2008, the Company shocked the market when it issued a press release announcing that it had understated income tax expense by $6.6 million and it would need to correct previously issued financial statements for the three months ended March 31, 2007 and for the six and nine months ended June 30, 2007 and September 30, 2007, respectively.  The press release stated in pertinent part:

> Immersion Corporation Reports Fourth Quarter 2007 Financial Results
>
> SAN JOSE, Calif., Feb 28, 2008 (BUSINESS WIRE) -- Immersion Corporation (NASDAQ:IMMR), a leading developer and licensor of touch feedback technology, today announced its fourth quarter 2007 financial results. Revenues were $9.9 million for the quarter ended December 31, 2007 or 15 percent higher when compared to revenues of $8.6 million for the fourth quarter of 2006.
>
> Net income for the fourth quarter was $0.5 million compared to a net loss of $(2.0) million for the fourth quarter of 2006. Diluted earnings per share were $0.02 for the quarter compared to $(0.08) loss per share for the fourth quarter of 2006.
>
> Revenues were $34.7 million for the year ended December 31, 2007 compared to revenues of $27.9 million for the year ended December 31, 2006, an increase of 25 percent. Net income for the year ended December 31, 2007 was $117.0 million, or $3.71 diluted earnings

per share, compared to a net loss of $(10.4) million, or $(0.42) loss per share, for the year ended December 31, 2006.

As of December 31, 2007, Immersion had cash, cash equivalents, and short-term investments totaling $138.1 million compared to $137.2 million as of September 30, 2007.

"In 2007, Immersion achieved revenue growth of 25 percent and profitability in each of the four quarters," said Victor Viegas, Immersion CEO, president, and chairman of the board. "We have substantial organic growth opportunities in our medical, mobility, and touch interface products businesses. We have a strong balance sheet that allows us to increase investment in new product development and in sales and marketing to drive a faster pace of customer adoption of our products and technologies worldwide."

The Company has determined that a correction is needed to the previously issued financial reports for the three months ended March 31, 2007 and for the six and nine months ended June 30, 2007 and September 30, 2007, respectively. The Company has determined that in the March 31, 2007 quarter, it understated income tax expense by $6.6 million. The net correction was the result of overestimating state income tax expense, offset by an error in releasing valuation allowance to income tax expense related to stock option deductions for prior years. This correction has no effect on revenue, operating income, or cash balances. The impact of these corrections is to increase previously reported income tax expense by $6.6 million, reduce income tax liability by $0.7 million, increase deferred tax assets by $0.3 million, and increase stockholders' equity by a net $1.0 million. Please refer to the Form 8-K filed with the Securities and Exchange Commission today for details on the correction. The Company's consolidated financial statements as of and for the year ended December 31, 2007 reflect the impact of the correction described in the Form 8-K.

42.     Following the above disclosures of the Company's malfeasance and accounting improprieties, shares of the Company's stock fell $1.81 per share (or almost 18%) to close at $8.43 per share on unusually heavy trading volume of over 16.5 million shares traded.

43.     On February 28, 2008, the Company filed a Form 8-K with the SEC revealing that it would have to restate the previously issued financial results for the three months ended March 31, 2007 and for the six and nine months ended June 30, 2007 and September 30, 2007, respectively.

44.     On April 24, 2008, the Company issued a press release introducing Defendant Richardson as the newly appointed President and CEO.  Commenting on Defendant Richardson joining the Company, Defendant Viegas said:

> "[Richardson] also brings proven experience in establishing business relationship with leading OEMS, developers, and service providers to create industry-wide support for products and technologies that *will help Immersion accelerate the capture of its significant upside potential."*

> *                    *                    *

Commenting on joining the Company, Defendant Richardson said:

> "Now is the time to build upon and take advantage of the company's strong financial footing, growing intellectual property portfolio, and global opportunities in the medical, mobility, touch-interface, and gaming markets.   With the success adoption of Immersion's technology by leading brands in markets around the world, *our focus will be to execute growth plans and accelerate customer adoption of our haptics technology. I look forward to leading Immersion to the next level and beyond* and to working with Vic [Viegas] and the board of directors to grow value for our shareholders, customers, and employees" – Defendant Richardson

45.     The foregoing statements made by Defendants Viegas and Richardson were materially false and misleading because the Company was failing to properly comply with GAAP in the revenue recognition practices of the Medical line of business, which was under the direct supervision of Defendant Chavez, and the Company's revenue and earnings at all relevant times were overstated due to false accounting practices.

46.     On May 1, 2008, the Company issued a press release detailing its first quarter 2008 financial results.  The press release stated, in pertinent part:

> Immersion Corporation (NASDAQ:IMMR), a leading developer and licensor of touch feedback technology, today announced its first quarter 2008 financial results. Revenues were $8.2 million for the quarter ended March 31, 2008 or 27 percent higher when compared to revenues of $6.4 million for the first quarter of 2007.

> Net loss for the first quarter was $(2.6) million compared to a net income of $115.8 million for the first quarter of 2007. Net income for the first quarter of 2007 included $134.9 million of litigation

conclusions and patent license. Loss per share was $(0.08) for the quarter compared to $3.91 diluted earnings per share for the first quarter of 2007.

\*       \*       \*

Commenting on the results, Defendant Richardson said:

"I'm pleased and excited to be joining Immersion to take our products and technology to the next level of adoption and proliferation and, in so doing, deliver more value to our shareholders, customers, and end users. We are adding high quality, experienced sales, marketing, and support people to further our plans for international growth and to help our customers around the world take advantage of and quickly implement haptics in their new products."

47.     On May 9, 2008, the Company filed its quarterly report with the SEC on Form 10-Q relating to the financial period ended March 31, 2008. The Form 10-Q reiterated the false net income and revenue results stated in the May 1, 2008, press release and contained certifications pursuant to sections 302 and 906 of the Sarbanes Oxley Act of 2002 signed by Defendants Richardson and Ambler. These certifications were identical to the ones presented above and were false and misleading because the Company lacked adequate internal controls and accounting procedures. The false and misleading financial reports lead to the artificial inflation in the value of the stock.

48.     The financial results of the Company and the statements made by Defendant Richardson were materially false and misleading because the Company was failing to properly comply with GAAP in the revenue recognition practices of the Medical line of business, which was under the direct supervision of Defendant Chavez, and the Company's revenue and earnings at all relevant times were overstated due to false accounting practices.

49.     On July 31, 2008, the Company issued a press release detailing its second quarter 2008 financial results. The press release stated, in pertinent part:

Immersion Corporation (NASDAQ:IMMR), the leader in developing and licensing touch feedback technology, (today announced its second quarter 2008 financial results. Revenues were $9.3 million for the quarter ended June 30, 2008, compared to

revenues of $8.6 million for the second quarter of 2007, an increase of 8%.

Net loss for the second quarter was $(3.1) million, compared to net income of $176,000 for the second quarter of 2007. Loss per share was $(0.10) for the quarter, compared to $0.01 diluted earnings per share for the second quarter of 2007.

Revenues were $17.5 million for the six months ended June 30, 2008, compared to revenues of $15.0 million for the first six months of 2007, an increase of 16%. Net loss for the first six months of 2008 was $(5.7) million, or $(0.19) loss per share, compared to net income of $116.0 million, or $3.81 diluted earnings per share, for the first six months of 2007. Net income for the first six months of 2007 included $134.9 million of litigation conclusions and patent license.

\*       \*       \*

Commenting on the results, Defendant Richardson said:

"We are aggressively expanding our global reach to support our focused growth opportunities in medical, mobility, and touchscreen tactile feedback. Our efforts include staffing with the very best people and locating them where the opportunities exist around the world. We are already seeing positive and measurable results from our investments. *Second quarter international revenues reached $4.5 million, almost 50% of total revenue and an increase of 25% compared to the year ago quarter.*"

50.     On August 8, 2008, the Company filed its quarterly report with the SEC on Form 10-Q relating to the financial period ended June 30, 2008. The Form 10-Q reiterated the false net income and revenue results stated in the July 31, 2008, press release and contained certifications pursuant to sections 302 and 906 of the Sarbanes Oxley Act of 2002 signed by Defendants Richardson and Ambler. These certifications were identical to the ones presented above and were false and misleading because the Company lacked adequate internal controls and accounting procedures.

51.     The financial results of the Company as reported in its form 10-Q and the statements made by Defendant Richardson were materially false and misleading because the Company was failing to properly comply with GAAP in the revenue recognition practices of the

1    Medical line of business, which was under the direct supervision of Defendant Chavez, and the

2    Company's revenue and earnings at all relevant times were overstated due to false accounting

3    practices.

4            52.    On October 30, 2008, the Company issued a press release detailing its third quarter

5    2008 financial results.  The press release stated, in pertinent part:

6                 Revenues for the third quarter of fiscal 2008 were $10.1 million, an
                  increase of approximately 3% over revenues of $9.8 million for the
7                 third quarter of 2007. Net loss for the third quarter, which included a
                  one-time charge of $20.75 million related to the settlement of
8                 Immersion's litigation with Microsoft, was $(32.3) million, or
                  $(1.10) per share. Excluding the one-time charge, and tax effects of
9                 $7.3 million, net loss for the third quarter was $(4.3) million, or
                  $(0.15) per share. This compares to net income of $493,000, or
10                $0.02 per diluted share, for the third quarter of 2007.

11

12                Commenting on the results, Defendant Richardson said:

13
                  "**Immersion's revenue of $10.1 million was not only the highest**
14                **revenue total in our history, but also the first time that quarterly**
                  **revenue has exceeded the $10 million mark.**  Results for the touch
15                side of our business were highlighted by strong adoption of our
                  solutions in high-volume mobile phones, while international sales
16                for our medical line of business were robust. We settled two
                  important legal disputes during the quarter, allowing management to
17                focus its time and energy on execution. In short, while we are not
                  satisfied with our growth rate or bottom-line results, Immersion
18                demonstrated solid execution and performance amidst the turbulent
                  macroeconomic environment."
19
                             *         *         *
20
                  "While we are mindful of the current economic climate,
21                **Immersion's extremely strong balance sheet and the magnitude of**
22                **the global opportunities to leverage the world's best IP portfolio of**
                  **haptics technology provides us with confidence in our growth**
23                **initiatives,**" concluded Richardson.
24
            53.    After the issuance of the press release on October 30, 2008, Defendant Richardson
25
     held a conference call with investors.  On the conference call Defendant Richardson stated that,
26
     "Immersion posted record revenue of $10.1 million in the third quarter of 2008.  This is not only
27

28

1   the highest revenue total in our company's history, but is also the first time that Immersion's

2   quarterly revenue has exceeded the 10 million mark."

3       54.    The financial results reported by the Company and statements made by Defendant

4   Richardson in the press release and conference call were materially false and misleading because

5   the Company was failing to properly comply with GAAP in the revenue recognition practices of

6   the Medical line of business, which was under the direct supervision of Defendant Chavez, and the

7   Company's revenues and earnings at all relevant times were overstated due to false accounting

8   practices.

9       55.    On November 7, 2008, the Company filed its quarterly report on Form 10-Q

10  relating to the financial period ended September 30, 2008.  The Form 10-Q reiterated the false net

11  income and revenue results stated in the October 30, 2008, press release and contained

12  certifications pursuant to sections 302 and 906 of the Sarbanes Oxley Act of 2002 signed by

13  Defendants Richardson and Ambler.  These certifications were identical to the ones presented

14  above and were false and misleading because the Company lacked adequate internal controls and

15  accounting procedures.

16      56.    On March 2, 2009, the Company issued a press release detailing fourth quarter and

17  full year financial results for 2008.  The press release stated in pertinent part:

18              Revenues for the fourth quarter of fiscal 2008 were $9.0
19          million, a decrease of 9% compared to revenues of $9.9 million for
            the fourth quarter of 2007 and a decrease of 11% compared to $10.1
20          million in the third quarter of 2008. Excluding $1.1 million in one-
            time deferred revenues for the third quarter of 2008, revenues for the
21          fourth quarter were flat sequentially. Net loss for the fourth quarter,
22          which included one-time charges of $2.6 million related to the
            divestiture of the 3D line of business, was $(9.7) million, or $(0.35)
23          per share. Excluding the one-time charges, net loss for the fourth
            quarter was $(7.1) million, or $(0.26) per share. This compares to
24          net income of $511,000, or $0.02 per diluted share, for the fourth
25          quarter of 2007 and to a net loss in the third quarter of 2008 of
            $(32.3) million, or $(1.10) per share, which included a one-time
26          charge of $20.75 million related to the settlement of Immersion's
27          litigation with Microsoft. Of the $2.6 million in costs related to the
            divestiture of the 3D line of business, $2.1 million was included

28

within Cost of Products Sales, with the remainder included within Restructuring Costs.

Revenues for fiscal 2008 were $36.5 million, an increase of 5% over revenues of $34.7 million for fiscal 2007. Net loss for fiscal 2008, which included one-time charges of $2.6 million related to the divestiture of the 3D line of business, and a $20.75 million settlement of Immersion's lawsuit with Microsoft, was $(47.7) million, or $(1.61) per share. Excluding the one-time charges and settlement, net loss for fiscal 2008 was $(24.4) million, or $(0.82) per share. This compares with net income of $117 million, or $3.71 per diluted share, in fiscal 2007, which included $134.9 million related to Litigation Settlements, Conclusions and Patent License Income.

\*       \*       \*

Immersion recently announced that it has restructured its operations into two primary lines of business - Medical and Touch - in an effort to improve focus, drive future growth and leverage synergies inherent to its business model. As part of this process, the company today announced that it is relocating its Medical line of business from Gaithersburg, Maryland to its corporate headquarters in San Jose, California. This move is designed to measurably improve the Medical line of business from an execution, operations and management perspective and is expected to result in meaningful cost savings beginning in mid-2009.

\*       \*       \*

Commenting on the results, Defendant Richardson said:

"Despite a backdrop of severe economic turmoil, Immersion posted growth in 2008.  We delivered this growth while undertaking decisive and transformative actions across our business as we have rebuilt our leadership team, simplified and streamlined our lines of business, forged important new customer relationships and recently re-launched our brand. The interest around products leveraging touch continues to gain momentum, creating a growing appreciation for Immersion's technology. We are now focused on execution and capitalizing on opportunities created by this trend in 2009, backed by a balanced and diversified business model, with a strong balance sheet from which to fund our growth objectives."

57.    The financial results of the Company and statements made by Defendant Richardson were materially false and misleading because the Company was failing to properly comply with GAAP in the revenue recognition practices of the Medical line of business, which

1   was under the direct supervision of Defendant Chavez, and the Company's revenues and earnings

2   at all relevant times were overstated due to false accounting practices.

3       58.     On March 9, 2009, the Company filed its annual report on Form 10-K for the

4   financial period ended December 31, 2008.  The Form 10-K reiterated the false net income and

5   revenue results stated in the March 2, 2009, press release and contained certifications pursuant to

6   sections 302 and 906 of the Sarbanes Oxley Act of 2002 signed by Defendants Richardson and

7   Ambler.  These certifications were identical to the ones presented above and were false and

8   misleading because the Company lacked adequate internal controls and accounting procedures.

9       59.     On May 4, 2009, the Company issued a press release detailing its first quarter 2009

10  financial results.  The press release stated, in pertinent part:

11              Revenues from Continuing Operations for the first quarter of
12          2009 were $7.0 million, an increase of 1% compared to revenues
            from Continuing Operations of $6.9 million for the first quarter of
13          2008 and a decrease of 8% compared to revenues from Continuing
            Operations of $7.6 million for the fourth quarter of 2008. Total
14          revenue generated during the first quarter of 2009 by the Company
15          was $7.5 million, $531,000 of which was included within Gain from
            Discontinued Operations.

16
17                      *       *       *

18              Net loss for the first quarter of 2009 was $(7.5) million, or
            $(0.27) per share, compared to net loss for the first quarter of 2008
19          of $(2.6) million, or $(0.08) per share and net loss of $(9.7) million,
20          or $(0.35) per share, for the fourth quarter of 2008, which included
            one-time charges of $2.6 million related to the divesture of the 3D
21          line of business.

22                      *       *       *

23  Defendant Richardson, commenting on the results, said:

24              "Demand for Immersion's proprietary TouchSense solutions was
25          strong as we posted sequential and annual growth for this line of
            business during the first quarter. Touch screens in mobile phones is
26          fueling demand for haptics in that market segment. We estimate that
            in 2008 our TouchSense technology shipped in 15% of touch screen
27          phones worldwide. Based on our current design wins with the top
            three handset manufacturers globally, we expect that number to
28          grow to approximately 25% of 2009 touch screen phone shipments.

Separately, we have begun to generate royalty license revenue from agreements with semiconductor companies and believe that this is the beginning of an important new revenue stream for Immersion."

"Domestic Medical sales were lower than expected primarily due to sluggishness in the rate of capital purchases from hospitals and other facilities caused by the overall economy, as well as seasonal fluctuations. The relocation of our Medical line of business to our headquarters, combined with cost-cutting initiatives, are expected to improve the operational and financial performance of that business. Given the reduced trajectory of our revenue growth rate, we have taken aggressive and prudent actions to decrease expenses across the company to achieve cash-flow breakeven and turn the corner on sustained profitability as quickly as possible. We will begin to experience the benefits of these actions in the second quarter, though the major payoff will be realized starting in the second half of 2009 and into next year. We are sizing the company appropriately to align with current revenue forecasts, while improving operational efficiency to capitalize on an unmistakable opportunity to shape the future of the user experience in digital devices."

60.    After the issuance of the press release on May 2, 2009, Defendant Richardson held a conference call with investors. On the conference call, Defendant Richardson stated that, "Revenue mix from continuing operations was $4.5 million from our Touch line of business and $2.5 million from our Medical line of business."

61.    The financial results of the company and statements made by Defendant Richardson in both the press release and the conference call were materially false and misleading because the Company was failing to properly comply with GAAP in the revenue recognition practices of the Medical line of business, which was under the direct supervision of Defendant Chavez, and the Company's revenue and earnings at all relevant times were overstated due to false accounting practices.

62.    On May 6, 2009, the Company filed its quarterly report on Form 10-Q relating to the financial period ended March 31, 2009. The Form 10-Q reiterated the false net income results stated in the May 4, 2009, press release and contained certifications pursuant to sections 302 and 906 of the Sarbanes Oxley Act of 2002 signed by Defendants Richardson and Ambler. These certifications were identical to the ones presented above and were false and misleading because the Company lacked adequate internal controls and accounting procedures.

## THE SECOND ACCOUNTING INDISCRETION IS REVEALED

63.     On July 1, 2009, the Company issued a press release entitled "Immersion Corporation Announces Internal Investigation." The press release stated, in pertinent part:

> Immersion Corporation (NASDAQ:IMMR) announced that the Audit Committee of the Board of Directors of Immersion Corporation ("Immersion") is conducting an internal investigation into certain previous revenue transactions in its Medical line of business. The investigation is being conducted with the assistance of outside counsel. The Audit Committee has not yet determined the impact, if any, to Immersion's historical financial statements. As a result of this investigation, Immersion may discover information that could raise issues with respect to its previously-reported financial information, which could be material. Immersion will not be able to evaluate the full impact of the aforementioned matters until the Audit Committee completes its review and further analysis is completed.
>
> Although Immersion currently intends to be in a position to file its quarterly report on Form 10-Q for the second quarter of fiscal 2009 on time and is diligently pursuing this investigation, it is possible that as a result of the investigation, Immersion would be unable to file its quarterly report and announce financial results in a timely manner.

64.     The market reacted quickly and decidedly negatively to the news, as the Company's stock spiraled down over 23% from its previous closing price of $4.94 per share to a closing price of $3.80 per share on July 1, 2009, on a volume of 1.5 million shares.

65.     During the Class Period, the Defendants knowing concealed material information from the investing public. Defendants knew that that Company's revenue recognition practices for the Medical line of business failed to comply with GAAP. Defendants also knew that the Company's reported revenue and earnings were materially overstated, as a result of improper accounting practices.

66.     The Company's stock was greatly inflated by the false statements and misleading financial reports prepared by the Defendants. The downward spiral in the price of the Company's stock represents the removal of inflation, and is the cause of great economic harm to the investors, who purchased the stock during the Class Period.

**UNDISCLOSED ADVERSE FACTS**

67.     The market for Immersion's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Immersion's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Immersion common stock relying upon the integrity of the market price of Immersion's common stock and market information relating to Immersion, and have been damaged thereby.

68.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Immersion's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company and its business and operations, as alleged herein.

69.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.

70.     Each Defendant is liable for (i) making false statements, or (ii) failing to disclose adverse facts known to him about Immersion.  Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Immersion common stock was a success, as it (i) deceived the investing public regarding Immersion's prospects and business; (ii) artificially inflated the prices of Immersion common stock; and (iii) caused Plaintiff and other members of the Class to purchase Immersion common stock at inflated prices.

71.     The public statements set forth above, and each of the financial statements contained in the reports filed with the SEC, were materially false and misleading and omitted facts necessary to make such statements about its income tax expenses and accounting for stock option deductions not misleading.

**SCIENTER ALLEGATIONS**

72.     As alleged herein, Defendants acted with scienter in that Defendants knew that the Company's public documents and statements issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws.  As set forth herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Immersion and its business practices, their control over and/or receipt of Immersion allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Immersion, were active and culpable participants in the fraudulent scheme alleged herein.  Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

73.     The Individual Defendants engaged in such a scheme to inflate the price of Immersion securities in order to protect and enhance their executive positions and the substantial compensation and prestige they obtained thereby.

**APPLICABILITY OF PRESUMPTION OF
RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE**

74.     At all relevant times, the market for Immersion securities was an efficient market for the following reasons, among others:

(a)     Immersion's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Immersion filed periodic public reports with the SEC; and

1              (c)     Immersion regularly communicated with public investors via established

2 market communication mechanisms, including through regular disseminations of press releases on

3 the national circuits of major newswire services and through other wide-ranging public

4 disclosures, such as communications with the financial press and other similar reporting services.

5         75.    As a result of the foregoing, the market for Immersion's securities promptly

6 digested current information regarding Immersion from all publicly available sources and reflected

7 such information in Immersion's stock price.  Under these circumstances, all purchasers of

8 Immersion securities during the Class Period suffered similar injury through their purchase of

9 Immersion securities at artificially inflated prices and a presumption of reliance applies.

10 **NO SAFE HARBOR**

11         76.    The statutory safe harbor provided for forward-looking statements under certain

12 circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

13 Many of the specific statements pleaded herein were not identified as "forward-looking

14 statements" when made.  To the extent there were any forward-looking statements, there were no

15 meaningful cautionary statements identifying important factors that could cause actual results to

16 differ materially from those in the purportedly forward-looking statements.  Alternatively, to the

17 extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein,

18 Defendants are liable for those false forward-looking statements because at the time each of those

19 forward-looking statements was made, the particular speaker knew that the particular forward-

20 looking statement was false, and/or the forward-looking statement was authorized and/or approved

21 by an executive officer of Immersion who knew that those statements were false when made.

22 **FIRST CLAIM**

**Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5**
23 **Promulgated Thereunder Against All Defendants**

24

25         77.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully

26 set forth herein.

27         78.    During the Class Period, Defendants carried out a plan, scheme and course of

28 conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Immersion securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

79.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Immersion securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

80.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations of Immersion as specified herein.

81.     These Defendants employed devices, schemes and artifices to defraud while in possession of material adverse non-public information.  Defendants engaged in acts, practices, and a course of conduct as alleged herein, which included the making of, or the participation in the making of, untrue statements of material facts and omitting the statement of material facts necessary to make the statements made about Immersion and its financial operations not misleading.  Defendants engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Immersion securities during the Class Period.

82.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of their

responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal financial budgets, plans, projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances and operations at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

83.     The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Immersion's operating condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' misstatements of the Company's income tax expenses throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

84.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Immersion securities was artificially inflated during the Class Period. In ignorance of the fact that the market prices of Immersion publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Immersion securities during the Class Period at artificially high prices and were damaged thereby.

85.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the true financial conditions that Immersion was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Immersion securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

86.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

87.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation Of Section 20(a) Of The Exchange Act
### Against the Individual Defendants

88.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

89.     The Individual Defendants acted as controlling persons of Immersion within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

90.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

91.     As set forth above, Immersion and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: September 28, 2009

Respectfully submitted,

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT

_____
BETSY C. MANIFOLD

1

2

750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599

3

4

5

LAW OFFICES OF BRUCE G. MURPHY
BRUCE G. MURPHY
265 Llwyds Lane
Vero Beach, FL  32963
Telephone:  561/231-4202

6

7

8

9

10

11

12

13

14

15

IMMERSION:17072

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, __Steven H. Buell__, ("Plaintiff") declare the following claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed the complaint and authorized its filing. Plaintiff retains the Law Offices of Bruce G. Murphy, P.C. and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.  Plaintiff did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.  Plaintiff is willing to serve as a Named and/or Lead Plaintiff either individually or as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| No. of Shares | Securities Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 465 | IMMR | Buy | 2-13-08 | 9.2599 |
| 465 | IMMR | Sell | 12-2-08 | 3.5701 |
| | | | | |

Please list other transactions on a separate sheet of paper, if necessary.

These securities were acquired or held in (check all that apply): ☐General (non-retirement account) ☐Merger/acquisition/distribution ☐Gift ☒IRA ☐Employer-sponsored plan (401k, 403b, etc.)

5.  During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below:

6.  The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24 day of September, 2009.


Steven H. Buell
Signature

Steven H. Buell
Print Name